UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RASHEEN ST. KITT,<br><br>                   Plaintiff,<br><br>v.<br><br>NEW YORK CITY TRANSIT AUTHORITY,<br><br>                   Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Rasheen St. Kitt ("Mr. St. Kitt" or "Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against the New York City Transit Authority ("NYCTA" or "Defendant"), alleging upon information and belief, except as to facts and matters that relate directly to Plaintiff, which are alleged upon knowledge:

**PRELIMINARY STATEMENT**

1. This is an action against the NYCTA for disability discrimination and/or retaliation. Plaintiff suffers from Multiple Sclerosis ("MS")[1], and he sought a reasonable

---

[1] MS is a chronic disease of the central nervous system in which the immune system "damages the protective cover around the nerves called myelin." *See* Cleveland Clinic, "Multiple Sclerosis (MS)," available at https://my.clevelandclinic.org/health/diseases/17248-multiple-sclerosis (last visited Oct. 8, 2024). MS affects all patients differently and to differing degrees of severity. John Hopkins Medicine, "Multiple Sclerosis (MS) Overview," available at https://www.hopkinsmedicine.org/health/conditions-and-diseases/multiple-sclerosis-ms (last visited Oct. 8, 2024). Symptoms can include, but are not limited to, "blurred or double vision," "muscle weakness," "loss of balance," "trouble with coordination," and "fatigue." *Id.* Many people diagnosed with MS are fully capable of working, especially with the appropriate reasonable accommodations. *See* Robert Furlan, "Employment among Patients with Multiple Sclerosis-A Population Study," available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4108421/ (last visited Oct. 8, 2024) ("Nearly half of all MS patients were still employed after almost two decades of having MS…The findings highlight the need for environmental adjustments at the workplace to accommodate individual's needs in order to improve working ability among MS patients.").

1

accommodation for his condition in November 2021. Instead of working expeditiously to try to accommodate Mr. St. Kitt so that he could meaningfully achieve equal employment opportunities, Defendant retaliated against him by requiring him to submit to serial, needless medical examinations over a six-month period.

2. Defendant has a custom, policy, and/or practice of requiring individuals with disabilities to wait approximately 6-12 months before Defendant considers them for reassignment. This custom, policy, and/or practice violates the New York City Human Rights Law's ("NYCHRL") requirement that, when an employer learns that an individual requires an accommodation due to his/her disability, the employer has an affirmative obligation to engage in a cooperative dialogue with the individual in an *expeditious* manner.

3. Defendant further discriminated against Mr. St. Kitt by denying him a reasonable accommodation, terminating him, and then failing to rehire him when a suitable position became available shortly after he was terminated.

4. Plaintiff was diagnosed with MS in 2010 and began working as a conductor for the NYCTA in February 2016. In August 2021, Plaintiff's MS worsened, and his doctor told him that he would no longer be able to perform the duties of a conductor and suggested he seek reclassification. Plaintiff requested a reclassification in or around November 2021, when he visited the NYCTA's sick leave unit and spoke with an NYCTA employee named Ms. Felix (first name currently unknown). Pursuant to his reclassification request, Plaintiff provided Ms. Felix with a doctor's note and medical records that established his disability and need for a reasonable accommodation.

5. Ms. Felix told Mr. St. Kitt that there were three jobs available for reclassification: cleaner, transit protection/security, and station/booth agent ("station agent"). She also informed

him that, even though he provided medical documentation from his treating physician, he still needed to report to the NYCTA's Medical Assessment Center ("MAC 3") for medical examinations by Defendant's doctors in order to pursue reclassification.

6. On November 5, 2021, a NYCTA doctor told Mr. St. Kitt that it could take anywhere from six months to a year for him to be reclassified because the NYCTA requires employees seeking reclassification to first attend three doctors' appointments, each three months apart. Mr. St. Kitt had no choice but to submit to the NYCTA's illegal policy, and he did so without pay because he exhausted his Paid Time Off ("PTO") in November 2021.

7. The NYCTA waited until July 8, 2022—nine months after Plaintiff's initial request—to inform him that they would not reasonably accommodate his disability by reclassifying him to a new position. At that time, Defendant also told Plaintiff that he would be terminated if he failed to return to work as a conductor on August 16, 2022. Mr. St. Kitt could not return due to his severe MS symptoms, so Defendant terminated him on August 17, 2022.

8. Almost a month after Mr. St. Kitt's termination, Defendant informed him that there was an open position for a station agent, and they instructed him to report to the NYCTA's Brooklyn office at 8:00 a.m. on September 7, 2024, for a routine lab test/drug screening. In order to make this early morning appointment, Mr. St. Kitt had to leave his home in Connecticut at 4:00 a.m. to travel by train because he lost his car due to not being able to afford the payments after his termination. However, when he arrived at Defendant's offices, Defendant informed Mr. St. Kitt that they contacted him by mistake, and that he was not eligible for re-employment.

9. The NYCTA was inconvenienced by Mr. St. Kitt's disabilities, so it terminated him and then refused to rehire him, all to avoid having to provide him with reasonable accommodations in the future, in clear violation of federal, New York State, and local laws. In

specific, Defendant's actions violate the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law, and the NYCHRL.

## PARTIES and JURISDICTION

10. Plaintiff a citizen of Florida, where he has lived since October 2022.

11. Defendant NYCTA was and is a quasi-department, agency, and/or subdivision of The State of New York, charged with providing transportation services to residents of New York City. Its offices are a located at 130 Livingston Street in Brooklyn, New York, and it is a citizen of New York.

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Florida and Defendant is a citizen of New York with its principal place of business in New York, and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over related claims because they arose from the same Article III case or controversy.

15. Venue is properly before this Court pursuant to 28 U.S.C. § 1391 because Defendant is located in this District and a substantial part of the events giving rise to this claim occurred in this District.

16. At least thirty days have elapsed since the demand, claim, or claims, upon which such action is founded, were presented to a member of the NYCTA, its general manager, or other

officer designated for such purpose. The NYCTA has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

17. On October 1, 2024, Plaintiff received a Notice of Right to Sue from the EEOC, which is attached hereto as **Exhibit A**.

## FACTS

18. Mr. St. Kitt was diagnosed with MS in 2010.

19. Mr. St. Kitt is disabled.

20. On or about February 29, 2016, Mr. St. Kitt began working for the NYCTA as a subway conductor. His duties included monitoring train cars, opening and closing doors, announcing train arrivals and departures, and operating the automatic announcement system.

21. Prior to starting his job at the NYCTA, Mr. St. Kitt had to undergo a medical assessment at the NYCTA's Medical Assessment Center. During this appointment, Mr. St. Kitt told the NYCTA's doctor that he had MS. He also submitted documentation regarding his condition.

22. Throughout his employment, Mr. St. Kitt performed his duties satisfactorily.

23. On or about August 16, 2021, Mr. St. Kitt's MS flared up, which caused him severe pain and rendered him unable to stand or walk without a cane. This was the first time Plaintiff suffered this type of flare-up.

24. Plaintiff requested to take extended sick leave to attend to his symptoms, which was approved by the NYCTA. However, he had to utilize his PTO to take this leave.

25. In or around September 2021, Mr. St. Kitt saw his personal neurologist, Dr. Brian Apatoff, about his worsening MS symptoms.

26. Plaintiff underwent an MRI, which revealed more lesions in his brain.

27. Dr. Apatoff recommended that Mr. St. Kitt seek a reclassification into a different position for the NYCTA.

28. After his appointment with Dr. Apatoff, Mr. St. Kitt contacted his union, TWU Local 100, to obtain information about reclassification and the steps he would have to take to get reclassified.

29. His union representative informed him that, in order to get reclassified, employees usually have to wait up to a year.

30. In November 2021, Plaintiff exhausted his PTO, so he was forced to continue his medical leave without pay.

31. In or around the beginning of November 2021, Plaintiff visited Ms. Felix, an employee in the NYCTA's sick leave unit, at the NYCTA's office at 130 Livingston Street in Brooklyn, NY.

32. At that meeting, Plaintiff provided Defendant with a doctor's note and medical records that established his disability and need for a reasonable accommodation.

33. If Defendant deemed Mr. St. Kitt's documentation insufficient, Defendant did not explain why the documentation was insufficient or allow Mr. St. Kitt the opportunity to provide any missing information in a timely manner. Nor is there any indication that Defendant considered consulting with Mr. St. Kitt's doctor before requiring Mr. St. Kitt to go to a health care professional of Defendant's choosing.

34. At that meeting, Plaintiff requested reclassification.

35. Ms. Felix informed Mr. St. Kitt that there were three positions available for reclassification: cleaner, transit protection/security, and station agent.

36. Plaintiff expressed interest in the station agent position.

37. Ms. Felix further instructed Mr. St. Kitt that, in order to pursue reclassification, he would have to report to MAC 3 for medical examinations.

38. Ms. Felix set up an appointment for Mr. St. Kitt to do so.

39. Ms. Felix did not ask Mr. St. Kitt and/or his health care provider for additional information before requiring that he be examined by Defendant's doctors.

40. Plaintiff visited the MAC 3 doctor (name currently unknown) on November 5, 2021. He informed the doctor that he was seeking reclassification.

41. The doctor performed a physical examination and asked Mr. St. Kitt to complete a questionnaire, but the doctor did not ask Mr. St. Kitt about his specific accommodation needs.

42. The doctor agreed that Mr. St. Kitt could not return to his prior job as a conductor.

43. The doctor also told Mr. St. Kitt that reclassification could take anywhere from six months to a year because the NYCTA requires employees seeking reclassification to prove, at three separate doctors' appointments, each three months apart, that the condition causing their inability to perform their prior position will not subside.

44. The doctor then instructed Mr. St. Kitt to return in three months' time for his second of three MAC 3 appointments.

45. Plaintiff remained on approved medical leave from November 2021 to February 2022 without pay.

46. On February 24, 2022, Mr. St. Kitt returned to MAC 3 to be re-examined by a new NYCTA doctor. Again, the doctor performed a physical examination but did not ask Mr. St. Kitt about his particular needs for reasonable accommodations. The doctor then told Mr. St. Kitt that Human Resources would be in touch with him about reclassification by June 2022.

47. Plaintiff resumed his sick leave from February 2022 to May 2022, still without pay.

48. On or about May 29, 2022, Mr. St. Kitt received a letter from Ms. Felix instructing him to return to MAC 3 for a third medical examination on June 29, 2022.

49. Between May 29, 2022 and June 29, 2022, Mr. St. Kitt repeatedly called Ms. Felix to find out the status of his reclassification request.

50. Ms. Felix told him that Human Resources could not make a decision regarding his reclassification until he was examined at his appointment on June 29, 2022.

51. On or about June 29, 2022, Mr. St. Kitt attended a third doctor's appointment at MAC 3. Once again, the doctor at MAC 3 physically examined Mr. St. Kitt but did not ask about his particular needs for a reasonable accommodation.

52. The doctor told Mr. St. Kitt that he could not return to his prior job as a conductor and suggested reclassification.

53. The doctor indicated that she would submit documents to Human Resources to see if they could find another position for Mr. St. Kitt.

54. On or about July 8, 2022, Ms. Felix called Mr. St. Kitt.

55. Ms. Felix told Plaintiff that the NYCTA would not accommodate his disability by placing him in any open positions within the NYCTA.

56. When Mr. St. Kitt asked for a reason, Ms. Felix stated that Human Resources did not provide one.

57. Defendant did not provide Mr. St. Kitt with a written final determination or the chance appeal Defendant's final decision.

8

58. Ms. Felix also told Mr. St. Kitt that he would be terminated if he were unable to resume his duties as a conductor by August 16, 2022.

59. Due to his disability, Plaintiff was unable to return to his position as a conductor.

60. On or about August 17, 2022, Defendant terminated Mr. St. Kitt.

***********

61. On or about September 6, 2022, Plaintiff received a call from Ms. Felix.

62. Ms. Felix informed him that there was an opening for a station agent and instructed him to report to MTA headquarters for a routine lab test/drug screening.

63. Mr. St. Kitt was eager to be re-employed and readily agreed to the test.

64. On or about September 7, 2022, Mr. St. Kitt left Connecticut at 4:00 a.m. to travel by train and get to downtown Brooklyn by 8:00 a.m. that day. He had to take public transportation because he lost his car after being terminated from his position at the NYCTA because he could no longer afford the payments.

65. When Plaintiff arrived, his lobby pass did not work. A security officer instructed him to call Ms. Felix for permission to enter the building.

66. Ms. Felix told him that he was contacted by mistake because his pass number was mixed up with another employee's.

67. She also informed Mr. St. Kitt that he was not eligible for re-employment.

## CLASS ACTION ALLEGATIONS

68. Plaintiff sues on his behalf and on behalf of the potential class, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3).

69. Defendant has a custom, policy, and/or practice of requiring individuals with disabilities to wait approximately 6-12 months before Defendant considers them for reassignment.

70. The NYCHRL states that, when an employer learns that an individual requires an accommodation due to his/her disability, the employer has an affirmative obligation to engage in a cooperative dialogue with the individual in an expeditious manner. Defendant's custom, policy, and/or practice violates the NYCHRL's requirement that employers engage in a cooperative dialogue in an expeditious manner.

71. Plaintiff and the class seek a declaration that Defendant's custom, policy, and/or practice violates the NYCHRL and economic and compensatory damages plus interest for the injuries caused by Defendant's unlawful custom, policy, and/or practice.

72. The class is defined as **all individuals who were subjected to Defendant's custom, policy, and/or practice of having individuals wait six months or more before being considered for reclassification.**

73. The class period commences on the date three years prior to the filing of this complaint and extends to the date on which Defendant is enjoined from, or otherwise ceases, implementing or enforcing its unlawful policy, practice, and/or custom.

74. The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is unknown, it is believed that there are more than 40. These individuals are known to Defendant, are readily identifiable, and can be located through Defendant's records.

75. There are questions of law and fact common to the members of the class that predominate over any questions solely affecting individual members. The common questions include:

    a. How long may an employer wait to engage in the cooperative dialogue under the NYCHRL?

    b. Does Defendant have a custom, policy, and/or practice of requiring all individuals needing a reasonable accommodation to submit to serial medical examinations over a 6-12 month period?

    c. Does Defendant's custom, policy, and/or practice of requiring individuals needing a reasonable accommodation to submit to serial medical examinations over a 6-12 month period violate the NYCHRL's requirement that employers engage in a cooperative dialogue in an expeditious manner?

76. Mr. St. Kitt is an adequate class representative, is committed to pursuing this action, and has retained competent counsel experienced in employment and class action litigation. The violations of law alleged by Mr. St. Kitt stem from the same course of conduct by the NYCTA that violated and continues to violate the rights of members of the class. Moreover, the legal theory under which Mr. St. Kitt seeks relief is the same or similar to that on which the class will rely. Moreover, the harm suffered by Mr. St. Kitt is typical of the harm suffered by the absent class members. Mr. St. Kitt has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.

77. Mr. St. Kitt is represented by Giskan Solotaroff & Anderson LLP ("Giskan Solotaroff" or the "firm"), which specializes in civil rights cases and class actions. Giskan Solotaroff has litigated a variety of class actions against governmental entities and has the

resources, expertise, and experience to prosecute this class action. Giskan Solotaroff knows of no conflicts among members of the class or between the firm and members of the class.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because (a) the prosecution of dozens or hundreds of separate actions would be inefficient and wasteful of legal resources; (b) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (c) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (d) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against Defendant, which would establish incompatible standards of conduct for Defendant; (e) Defendant has acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (f) questions of law and/or fact common to members of the class predominate over any questions that impact individual members.

79. Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

## **FIRST CLAIM FOR RELIEF**
(NYC Administrative Codes §§ 8-107 and 8-502(a))

80. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

81. Plaintiff has a "disability" as defined by NYC Administrative Code § 8-102.

82. Defendant failed to engage in a cooperative dialogue with Plaintiff in an expeditious manner, instead requiring three doctors' appointments over a six-month period before meaningfully engaging with Plaintiff's request for reassignment.

83. Defendant also failed to engage in a cooperative dialogue with Plaintiff by failing to ask about his specific needs in terms of a reasonable accommodation or express potential difficulties that a reasonable accommodation could impose upon the NYCTA.

84. Defendant also failed to engage in a cooperative dialogue with Plaintiff by not providing him a written final determination and by denying him both the opportunity to interview for reclassification and the chance to appeal Defendant's final decision.

85. Defendant failed to follow the NYCHRL when it refused to offer Plaintiff a reasonable accommodation when he requested reassignment in November 2021 due to his MS and in September 2022 when it failed to rehire him after a suitable position became available.

86. Defendant retaliated against Mr. St. Kitt by requiring that he submit to serial, unnecessary medical examinations.

## SECOND CLAIM FOR RELIEF
(N.Y. Exec. Law § 296)

87. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

88. Plaintiff has a "disability" as defined by N.Y. Exec. Law § 292(21).

89. The NYCTA failed to follow New York State law when it refused to offer Plaintiff a reasonable accommodation when he requested reassignment in November 2021 due to his MS and in September 2022 when it failed to rehire him after a position became available.

90. Defendant failed to engage in a cooperative dialogue with Plaintiff in an expeditious manner, instead requiring three doctors' appointments over a six-month period before meaningfully engaging with Plaintiff's request for reassignment.

91. Defendant also failed to engage in a cooperative dialogue with Plaintiff by failing to ask about his specific needs in terms of a reasonable accommodation or express potential difficulties that a reasonable accommodation could impose upon the NYCTA.

92. Defendant also failed to engage in a cooperative dialogue with Plaintiff by not providing him a written final determination and by denying him both the opportunity to interview for reclassification and a chance to appeal Defendant's final decision.

93. Defendant retaliated against Plaintiff by requiring him to submit to serial, unnecessary medical examinations.

### THIRD CLAIM FOR RELIEF
(42 U.S.C.S. § 12112)

94. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

95. Defendant has a "disability" as defined by 42 U.S.C.S. § 12102(1).

96. The NYCTA failed to follow federal law when it refused to offer Plaintiff a reasonable accommodation when he requested reassignment in November 2021 due to his MS and in September 2022 when it failed to rehire him after a position became available.

97. Defendant failed to engage in a cooperative dialogue and/or the interactive process with Plaintiff in an expeditious manner, instead requiring three doctors' appointments over a six-month period before meaningfully engaging with Plaintiff's request for reassignment.

98. Defendant also failed to engage in a cooperative dialogue and/or the interactive process with Plaintiff by failing to ask about his specific needs in terms of a reasonable accommodation or express potential difficulties that a reasonable accommodation could impose upon the NYCTA.

99. Defendant also failed to engage in a cooperative dialogue and/or the interactive process with Plaintiff by not providing him a written final determination and by denying him both the opportunity to interview for reclassification and a chance to appeal Defendant's final decision.

100. Defendant retaliated against Plaintiff by requiring him to submit to serial, unnecessary medical examinations.

## JURY DEMAND

101. Plaintiff demands trial by jury of all issues as of right by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff asks this Court:

A. To enter an order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) and (b)(3) for the class described herein, and appointing Plaintiff and his counsel to represent the members of the class;

B. To enter a judgment declaring illegal Defendant's custom, policy, and/or practice;

C. To issue an order enjoining Defendant from implementing or enforcing its custom, policy, and/or practice;

D. To award Plaintiff and members of the class compensatory and economic damages in an amount to be determined at trial, plus prejudgment interest;

E. To award Plaintiff and members of the class punitive damages in an amount to be determined at trial, plus prejudgment interest;

F.      To award prejudgment and post-judgment interest;

G.      To award costs, expenses, and reasonable attorneys' fees; and

H.      To grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 21, 2024

**GISKAN SOLOTAROFF & ANDERSON LLP**

By: /s/Raymond Audain
Raymond Audain
Symone Yancey
raudain@gslawny.com
syancey@gslawny.com
212-847-8315
90 Broad Street, 2nd Floor
New York, New York 10004

*Attorneys for Plaintiff and the Class*